Alicia DANIELSON, Plaintiff-Appellant,

v.

Andrea H. GASPER, ABC Insurance Company, and
Wisconsin Medical Assistance, Defendants,

Jerome Eric CLARK and Illinois Farmers Insurance
Company, Defendants-Respondents.

Court of Appeals

*No. 00–0950. Submitted on briefs November 6, 2000.—Decided
December 19, 2000.*

2001 WI App 12

(Also reported in 623 N.W.2d 182.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jason W. Whitley* of *Novitzke, Gust & Sempf* of Amery.

On behalf of the defendant-respondent, Illinois Farmers Insurance Company, the cause was submitted on the brief of *Susan R. Tyndall* of *CMT Legal Group, Ltd.* Of Waukesha.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Alicia Danielson appeals a summary judgment dismissing Illinois Farmers Insurance Company from this action. Danielson was injured when the car in which she was a passenger was struck by Andrea Gasper, who was driving a car that Jerome Clark had loaned her. Danielson acknowledges that Clark's insurer, Farmers, paid her $100,000, its full policy coverage for each person per occurrence. How-

ever, she argues Farmers should not have been dismissed because Clark's alleged negligent entrustment of the car to Gasper constitutes a separate occurrence that provides an additional $100,000 in policy coverage. Thus, the issue is whether this single automobile liability policy provides coverage for two occurrences where there was a single car accident allegedly caused by negligent entrustment and negligent driving. Because we conclude that there was only one occurrence as defined by the policy (equating an occurrence with an accident), we reject Danielson's argument and affirm the judgment.

¶ 2. After Danielson was injured, she brought suit alleging that Gasper negligently drove the car and that Clark had negligently entrusted the car to Gasper. At the time of the accident, Clark, a Minnesota resident, had an insurance policy with Farmers that provided $100,000/$300,000 coverage for each occurrence. The policy potentially provided coverage to Gasper as the driver and Clark as the owner. Farmers paid $100,000 to Danielson for Gasper's negligence.

¶ 3. After Farmers paid Danielson $100,000, it moved for summary judgment on grounds that it had exhausted its policy limits because it had no further obligation to defend or indemnify Clark. Danielson opposed the motion, arguing that Gasper's negligent driving and Clark's negligent entrustment were separate acts that constitute separate occurrences under the Farmers policy.[1] The circuit court concluded that there were no disputed issues of material fact and that Farmers was entitled to judgment as a matter of law. The court dismissed Farmers from the suit and this appeal followed.

---

[1] Clark did not actively participate in the motion and did not take a position for or against summary judgment.

¶ 4.   On appeal, the parties agree that there are no issues of disputed fact and that this case presents issues of contract interpretation. The interpretation of an insurance contract is a question of law that this court reviews de novo. *See Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 635–36, 586 N.W.2d 863 (1998). The interpretation of an insurance contract is controlled by principles of contract construction. *See General Cas. Co. v. Hills*, 209 Wis. 2d 167, 175, 561 N.W.2d 718 (1997). "The primary objective in interpreting a contract is to ascertain and carry out the intentions of the parties." *Id.* To that end, "the language of an insurance policy should be interpreted to mean what a reasonable person in the position of the insured would have understood the words to mean." *Id.*

¶ 5.   The first issue presented is whether Minnesota or Wisconsin law governs interpretation of the contract. The insurance policy was delivered to Clark in Minnesota and Clark, a Minnesota resident, kept the vehicle in Minnesota. However, the accident occurred in Wisconsin, and Danielson and Gasper are both Wisconsin residents. The threshold determination in a conflict of laws case is whether a genuine conflict exists between Wisconsin law and the law of the other state. *See Gavers v. Federal Life Ins. Co.*, 118 Wis. 2d 113, 115, 345 N.W.2d 900 (Ct. App. 1984). If the laws of the two states are the same, we apply Wisconsin law. *See Sharp ex rel. Gordon v. Case Corp.*, 227 Wis. 2d 1, 11, 595 N.W.2d 380 (1999).

¶ 6.   Danielson argues that regardless of whether we interpret the Farmers policy pursuant to Wisconsin or Minnesota contract law, the result is the same

because a clause in the Farmers policy requires that the policy be interpreted according to the broadest coverage allowed by the state in which the accident occurred. Although we reject this argument because Danielson raises it for the first time on appeal, we note that Danielson has not argued, in the alternative, for the application of Minnesota law. Farmers argues that Minnesota law applies, but that even if Wisconsin law applies, the result would be the same. Because neither party identifies a conflict, we will apply Wisconsin law. *See id.*

¶ 7. The second issue presented is whether there were two occurrences, as defined by the insurance policy. In its definition section, the policy provides: "**Accident** or **occurrence** means a sudden event, including continuous or repeated exposure to the same conditions, resulting in **bodily injury** or **property damage** neither expected nor intended by the insured person." Danielson argues that there are two separate occurrences, two separate torts, two separate tortfeasors and, therefore, two separate policy limits that would provide coverage. Danielson bases her argument on *Iaquinta v. Allstate Ins. Co.*, 180 Wis. 2d 661, 510 N.W.2d 715 (Ct. App. 1993). In *Iaquinta*, we examined an insurance policy issued in Wisconsin to a Wisconsin resident who, like Danielson, alleged both negligent driving and negligent entrustment.

¶ 8. In *Iaquinta*, we concluded that Wisconsin's omnibus statute required that full policy coverage be afforded to two tortfeasors, which raised the insurer's liability to $200,000. *See id.* at 665–66. Specifically, we concluded that WIS. STAT. § 632.32(3)[2] required that

---

[2] WISCONSIN STAT. § 632.32 provides in relevant part:

**Provisions of motor vehicle insurance policies.**

full policy coverage be provided in cases where both the named insured and the additional insured are actively negligent. *See id.* at 666.

¶ 9. Danielson argues that as in *Iaquinta*, Wisconsin's omnibus statute requires that the Farmers policy provide full coverage because both the named insured, Clark, and the additional insured, Gasper, were actively negligent. Farmers responds that *Iaquinta* was legislatively overruled in 1995 by the introduction of WIS. STAT. § 632.32(5)(f) and, alternatively, that § 632.32 applies only to policies issued and delivered in Wisconsin. *See* WIS. STAT. § 632.32(1).[3] We conclude that Farmers' second argument is dispositive.[4]

¶ 10. WISCONSIN STAT. § 632.32(1) does not require a Minnesota insurer issuing a policy in Minne-

----

. . . .

(3) REQUIRED PROVISIONS. Except as provided in sub. (5), every policy subject to this section issued to an owner shall provide that:

(a) Coverage provided to the named insured applies in the same manner and under the same provisions to any person using any motor vehicle described in the policy when the use is for purposes and in the manner described in the policy.

(b) Coverage extends to any person legally responsible for the use of the motor vehicle.

[3] WISCONSIN STAT. § 632.32(1) provides:

SCOPE. Except as otherwise provided, this section applies to every policy of insurance issued or delivered in this state against the insured's liability for loss or damage resulting from accident caused by any motor vehicle, whether the loss or damage is to property or to a person.

[4] Therefore we do not consider further Farmers' argument that *Iaquinta v. Allstate Ins. Co.*, 180 Wis. 2d 661, 510 N.W.2d 715 (Ct. App. 1993), was legislatively overruled. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need to be addressed).

sota to comply with statutes established for policies issued in Wisconsin. Instead, it expressly indicates that it applies "to every policy of insurance issued or delivered in this state." *See* WIS. STAT. § 632.32(1). Because the policy was not issued or delivered in this state, the only way that § 632.32 could apply is if Farmers and its insured, Clark, agreed by contract to incorporate Wisconsin's omnibus statute into the policy.

¶ 11.   Danielson contends that a provision of the Farmers policy entitled "Out of State Coverage" requires that the policy provide whatever coverage is required by Wisconsin law.[5] Farmers asserts that because Danielson raises the issue of the applicability of this policy provision for the first time on appeal, we should decline to address this argument. We agree. *See State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997) (issues not presented in trial court will not be considered for the first time on appeal). Even if we were inclined to address this argument, Danielson has offered no case law to support her interpretation of the provision, thereby providing another reason why we decline to address this argument. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992).

---

[5] The provision states:

An **insured person** may become subject to the financial responsibility law, compulsory insurance law or similar law of another **state** or in Canada. This can happen because of the ownership, maintenance or use of **your insured car** when you travel outside of Minnesota. We will interpret this policy to provide any broader coverage required by those laws, except to the extent that other liability insurance applies. No person may collect more than once for the same elements of loss.

¶ 12.  Danielson has not convinced us that WIS. STAT. § 632.32 applies to an insurance policy issued in Minnesota to a Minnesota resident. Therefore, *Iaquinta* is not controlling. Neither the omnibus statute nor any other Wisconsin statute requires us to impose additional rights or duties on the contracting parties.[6] Instead, the parties' rights and duties must be determined based solely on our interpretation of the words in the policy. The language of the policy should be interpreted to mean what a reasonable person in the position of the insured would have understood the words to mean. *See General Cas. Co.*, 209 Wis. 2d at 175.

¶ 13.  The Farmers policy provides that the bodily injury liability limit for each person, $100,000, is the maximum for bodily injury sustained by one person in any occurrence. The policy explicitly defines the key terms at issue: **"Accident** or **occurrence** means a sudden event, including continuous or repeated exposure to the same conditions, resulting in **bodily injury** or **property damage** neither expected nor intended by the insured person."  This definition is unambiguous; an occurrence is the same thing as an accident: a sudden event resulting in bodily injury. Here, the sudden event resulting in bodily injury was the collision of Gasper's and Danielson's cars. Pursuant to the policy's definition of the word accident, we do not consider the acts, incidents or omissions that led to the accident for purposes of determining the maximum amount paya-

---

[6] In addition to not convincing us that any Wisconsin statute requires us to impose additional rights or duties on the parties' contract, Danielson fails to cite any Minnesota statute or case that would impose rights or duties.

ble to Danielson under this single policy.[7] Instead, we look to the accident itself and the number of persons injured to determine the limits of liability.

¶ 14.  The Farmers policy had a bodily injury liability limit of $100,000 for each person injured in an auto accident, with $300,000 as the maximum amount payable to injured persons in each accident. The policy states that these amounts are the most that Farmers will pay regardless of the number of "insured persons" or claims made.[8] Thus, the number of insureds whose negligence caused the accident does not determine the amount payable under the policy. Instead, the amount payable is $100,000 for each person injured in an acci-

---

[7] We are mindful that our supreme court has previously held that in some cases, the words "accident" and "occurrence" should be viewed from the perspective of cause rather than effect. *See Olsen v. Moore*, 56 Wis. 2d 340, 349–51, 202 N.W.2d 236 (1972). In *Olsen*, the court was dealing with insurance coverage for passengers of two cars that were struck by the defendant Moore's car. *See id.* at 342–43. The passengers argued that Moore's impact with the first automobile was a separate "occurrence" from Moore's impact with the second automobile for purposes of determining coverage under Moore's policy. *See id.* at 345. The court had to look to the cause of the collisions to determine whether a single, uninterrupted cause resulted in a number of injuries. *See id.* at 349. The court concluded that because there was only one cause, there was only one accident. *See id.* at 350. In the case before us, only one collision—one accident—occurred. Therefore, in contrast to *Olsen*, we do not have to construe the word "accident" from the standpoint of the cause rather than the effect.

[8] The policy states: "We will pay no more than the maximum limits provided by this policy regardless of the number of vehicles insured, **insured persons**, claims, claimants, policies or vehicles involved in the **occurrence**."

dent or a total of $300,000 for all persons injured if two or more persons are injured. Therefore, under the plain language of the policy, Danielson is entitled to $100,000 from the policy to compensate her for her injuries. Because Farmers has already settled with Danielson for this amount, the circuit court correctly granted summary judgment in Farmers' favor.

*By the Court.*—Judgment affirmed.